# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                    Plaintiff,<br>        vs.<br>LUIS ALBERTO GALVAN-RUBIO,<br><br>                                    Defendant. | CASE NO. 3:13-cr-1909-JM<br><br>ORDER DENYING MOTION TO DISMISS INFORMATION |

Pursuant to 8 U.S.C. §1326(d), Defendant Luis Alberto Galvan-Rubio moves to dismiss the Information charging him with being a deported alien found in the United States in violation of 8 U.S.C. §§1326(a) and (b). The Government opposes the motion. For the following reason, the court denies Defendant's motion to dismiss the Information.

## I.    BACKGROUND

On April 14, 2013 at approximately 3:00 a.m., Defendant attempted to enter the United States from Mexico at the Otay Mesa Port of Entry as a passenger in a vehicle by presenting a California identification card with a California birth certificate bearing the name "J.J.V." The U.S. Customs and Border Patrol ("CBP") Officer suspected that Defendant was not the rightful owner of the documents presented. A query of Defendant's fingerprints through the Automated Biographic Identification System (IDENT/IAFIS) identified him as a Mexican citizen who had previously been removed

from the United States. Additional queries in the Central Index System ("CIS") and Enforce Alien Removal Module ("EARM") confirmed that Defendant was a Mexican citizen without legal documents to enter the United States. The CIS and EARM searches revealed that an immigration judge had ordered the Defendant to be removed on or about April 20, 2006. They also revealed that Defendant had last been physically removed on April 23, 2010 in San Ysidro, California. Defendant was charged with violating 8 U.S.C. § 1326 as he entered the United States without the express consent of the Secretary of the Department of Homeland Security or his reapplication for admission to the United States.

## Immigration History

An immigration judge originally granted Defendant voluntary departure on March 21, 2001, and Defendant was subsequently removed that day. Defendant illegally reentered the country sometime later. On March 28, 2003, Defendant was served a Notice that he was an aggravated felon due to a May 22, 2002 conviction for the offense of possession of a firearm by a felon.[1] Defendant waived his petition for review and was removed pursuant to a Final Administrative Removal Order the next day. Defendant again illegally reentered the United States sometime after his deportation. On May 17, 2004, the aforementioned Final Administrative Removal Order was reinstated, and Defendant was subsequently removed on June 7, 2004.

Defendant again reentered the United States illegally sometime around March 1, 2005. On April 6, 2006, Defendant was served a Notice that he had entered the United States without inspection. Pursuant to that notice, an immigration judge issued an Order to remove Defendant on April 20, 2006. At the time of the hearing, Defendant admitted that he was an aggravated felon subject to a maximum custodial period of 20 years if he reentered the United States without authorization.

---

[1] This was Defendant's fourth conviction. He was previously convicted of battery on October 18, 1999, possession of a firearm by a felon on March 15, 2000, and possession of a firearm by a felon on July 6, 2000. See Opp. MTD at 2.

On April 22, 2010, the United States claims that the immigration judge's April 20, 2006 order was reinstated after Defendant illegally reentered the United States. At the time of this removal, Defendant argues that the allegedly invalid 2004 administrative removal order was reinstated. The Government's Exhibit 13 confirms both explanations as both the April 22, 2006 and June 7, 2004 orders are listed in the April 21, 2010 reinstatement.[2] Defendant signed the April 22, 2010 order, indicating that he did not wish to make a statement contesting this determination. Defendant was removed again on April 23, 2010.

## Criminal History

Defendant has an extensive criminal history consisting of at least one misdemeanor conviction for battery and five felony convictions for possession of a firearm by a felon in violation of Cal. Penal Code §12021(a). In the aggregate, Defendant was sentenced to over six years in state custody for his state crimes.

II. **LEGAL STANDARD**

A defendant in a §1326 prosecution may collaterally attack a prior deportation before trial and preclude the government from relying on such deportation where "the deportation proceeding was so procedurally flawed that it effectively eliminated the right of an alien to obtain judicial review. . . ." United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996), cert. denied, 117 S. Ct. 1096 (1997). The collateral attack of a prior deportation is statutorily permitted only if:

> (1) the alien has exhausted any administrative remedies that may have been available to seek relief against the order,
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity to seek relief against the order; and
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. §1326(d)(1-3).

An underlying removal order is fundamentally unfair if (1) a defendant's due process rights were in fact violated and (2) he suffered prejudice. See United States

---

[2] On June 24, 2006 Defendant was sentenced to 51 months' incarceration for violation of 8 U.S.C. §1326(a).

v. Gutierrez-Alba, 128 F.3d 1324 (9th Cir. 1997). To establish prejudice, a defendant "does not have to show that he actually would have been granted relief. Instead, he must only show that he had a 'plausible' ground for relief from deportation." U.S. v. Muro-Inclan, 249 F.3d 1180, 1184 (9th Cir. 2001).

An "alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). No alien deportable as an aggravated felon under § 1227(a)(2)(A)(iii) "shall be eligible for any relief from removal . . . ." 8 U.S.C. § 1228(b)(5); see also U.S. v. Garcia-Martinez, 228 F.3d 956, 963 (9th Cir. 2000) (holding that the deportation of an aggravated felon is a foregone conclusion and that the aggravated felon could not demonstrate that other relief was available).

Courts usually employ a "categorical approach when determining whether an alien qualifies as an aggravated felon." See, e.g., Gonzalez v. Duenas-Alvarez, 549 U.S. 183, 185-87 (2007). However, where a state statute is categorically broader than the generic definition of a crime, a federal court employs a modified categorical approach. See Taylor v. United States, 495 U.S. 575, 602 (1990) (explaining the narrow parameters under which the inquiry under a categorical approach for enhancements at sentencing may be expanded to pleading documents). "Under the modified categorical approach, we conduct a limited examination of documents in the record of conviction to determine if there is sufficient evidence to conclude that a defendant was convicted of the elements of the generically defined crime even though his or her statute was facially overinclusive." United States v. Wenner, 351 F.3d 969, 972 (9th Cir. 2003) (citing INS v. Chang, 307 F.3d 1185, 1189 (9th Cir. 2002)). The inquiry is limited to examining easily produced and evaluated court documents, including the judgment of conviction, charging papers, plea agreement, presentence report adopted by the court, and the findings of a sentencing judge.

III. **DISCUSSION**

    A.    Exhaustion

Defendant claims that he is excused from demonstrating a failure to exhaust administrative remedies because his waiver of the right to administrative appeal did not comport with due process. See Muro-Inclan, 249 F.3d at 1183. He notes that such waivers must be considered and intelligent but contends that his wavier was neither. See id. Defendant explains that the form he signed waiving appeal only provided him with the ability to contest whether he was convicted of a criminal offense, not the nature of that criminal offense and whether that criminal offense qualified as an aggravated felony. MTD at 16. As such, Defendant claims that his waiver was not knowing and intelligent.

The Government argues that Defendant was served a Notice of Intent, which Defendant allegedly read and understood. He was also informed of his "Rights and Responsibilities," including the right to seek judicial review of any final administrative removal order. As Defendant does not claim that his rights were improperly explained to him, the Government claims that he validly waived his right to appeal. See United States v. Galicia-Gonzalez, 997 F.2d 602, 603 (9th Cir. 1993) ("Defendant has not even alleged there was anything wrong with his deportation, i.e., that his rights were improperly explained or that he was coerced into waiving them. The government's prima facie showing thus stands unchallenged and this satisfies the government's burden of showing a valid deportation for purposes of section 1326.").

The Government further argues that challenges regarding the type of conviction are the "type of routine challenge that the [Board of Immigration Appeals] is meant to address, for exhaustion purposes." Opp. MTD at 9-10 (citing United States v. Estrada-Torres, 179 F.3d 776, 780 (9th Cir. 1999)). Moreover, the United States notes that a waiver of right to appeal is not involuntary merely because a defendant did not know exactly what the nature of those appeals might be. See United States v. Johnson, 67 F.3d 200, 202-03 (9th Cir. 1995). Defendant's failure to collaterally challenge an underlying removal in an illegal reentry case, is a

classic failure to exhaust his administrative remedies. See United States v. Garza-Sanchez, 217 F.3d 806, 808 (9th Cir. 2000) ("A defendant charged under 8 U.S.C. § 1326 may not collaterally attack the underlying deportation order if he or she did not exhaust administrative remedies in the deportation proceedings, including direct appeal of the deportation order.").

The court finds that Defendant has not met the exhaustion requirement or shown that his waiver of the right to administrative appeal did not comport with due process. Defendant's waiver does not appear to have been made unintelligently. That Defendant did not understand that he was giving up his right to contest the nature of his convictions is insufficient to demonstrate his waiver did not comport with due process. To agree with Defendant's argument would be tantamount to ruling that any alien may claim that their waiver was unintelligent because he or she was unaware that another defense could be asserted. Accordingly, the court denies the Defendant's motion to dismiss for failure to meet the exhaustion requirement.[3]

In sum, the court finds that Defendant failed to exhaust available remedies and therefore denies the motion to dismiss the Information.

B.      Unfairness

As noted by the parties, an underlying removal order is fundamentally unfair if (1) a defendant's due process rights were in fact violated and (2) he suffered prejudice. See Gutierrez-Alba, 128 F.3d 1324. Briefly, Defendant contends that his five convictions for being a felon in possession of a firearm in violation of Cal.Penal Code §12021(a)(1) may not constitute aggravated felonies within the meaning of INA §101(a)(43)(E). Defendant argues that California Penal Code § 12021 is broader than the definition of firearm under federal law, which contains an exemption for "antique guns." See 18 U.S.C. § 921(a)(16) (defining antique guns as firearms made before 1898 or muzzle loading firearms). The court

---

[3] Even assuming Defendant's argument that Moncrieffe v. Holder, 133 S.Ct. 1678 (2013) should be applied retroactively to Defendant's earlier removals, the court rejects such a notion. There is no indication or argument that Moncrieffe would apply retroactively under Teague v. Lane, 490 U.S. 1031 (1989).

recognizes that California courts have previously convicted felons under California Penal Code § 12021 for possessing an antique firearm.  See, e.g., People v. Servin, 2010 WL 1619298 (Cal. App. Ct. 2010) (convicting a felon in possession of a single-shot, muzzleloader, percussion rifle under California Penal Code § 12021).  It appears questionable whether California Penal Code § 12021 categorically constitutes an aggravated felony under federal law because there is a possibility that a conviction under Cal. Penal Code §12021 may not constitute a felony conviction under federal law if the state conviction was for the possession of an antique firearm.  See Gonzalez v. Duenas-Alvarez, 549 U.S. 183, 193 (2007) (categorical approach not applicable where there is a "realistic probability . . . that the State would apply its statute to conduct that falls outside the generic definition of crime"); Moncrieffe v. Holder, 133 S. Ct. 1678, 1685 (2013).

      Whether the prospect of a state prosecution under §12021 for possession of an antique firearm remains a theoretical possibility or a realistic probability would seem to depend on further definition of these terms.  If a "probability" means a chance of something occurring, then a "realistic probability" would seem to demand more, i.e. some quantum of evidence or experience establishing a likelihood of the event occurring.  The parties, in their papers, have identified only four unpublished California convictions under §12021 for possession of antique firearms.  (Motion at p.12 n.3).  Notably, since the year 2000 to the present, Defendant identifies only one conviction for possession of an antique firearm every three years or so.  By comparison, the State of California convicts, on average, about 900 individuals a year for violation of §12021 (arrests for violation of §12021 are about 4,000 per year).  California Department of Justice, Special Report to the Legislature on Senate Bill 1608 (July 2002), Data Table 1, http://oag.ca.gov/sites/all/files/pdfs/cjsc/publications/misc/net1608/1report.pdf.[4]  In other words, the probability of Defendant being convicted for possession of an

---

[4] Pursuant to Federal Rule of Evidence 201, the court takes judicial notice of this document issued by the California Department of Justice.

antique firearm is about one case in 2,700, assuming one conviction for possession of antique firearms occurs once every three years. When one considers that Defendant has five convictions for felon in possession of a handgun, the probability that Defendant was convicted for possession of an antique firearm is infinitesimal. Stated another way, while there is a theoretical possibility that Defendant's convictions may have involved antique firearms, such a possibility is extremely remote and does not reach the level of a realistic probability.  As noted by the Supreme Court in Moncrieffe, a theoretical possibility that a defendant may have possessed antique firearms does not bar enforcement of the aggravated felony provisions. 133 S.Ct. at 1693.

In Moncrieffe the Supreme Court determined that the social sharing of a small amount of marijuana is not categorically an "aggravated felony" drug trafficking offense because federal law affords misdemeanor treatment of the social sharing of a small amount of marijuana. Id. at 1683-87. In response to the Government's argument that the Supreme Court's holding would undermine other aggravated felony provisions, the Supreme Court stated:

> Finally, the Government suggests that our holding will frustrate the enforcement of other aggravated felony provisions, like § 1101(a)(43)(C), which refers to a federal firearms statute that contains an exception for "antique firearm[s]," 18 U.S.C. § 921(a)(3). The Government fears that a conviction under any state firearms law that lacks such an exception will be deemed to fail the categorical inquiry. But Duenas–Alvarez requires that there be "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." 549 U.S., at 193, 127 S.Ct. 815. To defeat the categorical comparison in this manner, a noncitizen would have to demonstrate that the State actually prosecutes the relevant offense in cases involving antique firearms.

133 S.Ct. at 1693.

Moreover, applying the modified categorical approach, the court cannot conclude that entry of the deportation order was fundamentally unfair. There is simply nothing in the record to support a finding that Defendant possessed an antique or muzzle-loaded firearm. To the contrary, Defendant's felon in possession of a firearm abstracts of judgment and felony complaints dated March 15, 2000, July

6, 2000, May 22, 2002, July 10, 2003, May 5, 2005 and June 24, 2006 each identify that Defendant unlawfully possessed "a firearm, to wit, handgun." (Gov't Exh. 1-3). This evidence is sufficient to conclude that Defendant was convicted of the elements of the generically defined federal crime. On this evidentiary record, to conclude that a serial armed felon like Defendant would be in possession of an antique firearm (including a matchlock, flintlock, or percussion cap firearm) strains credibility and defies common sense. The record establishes that the Government has met its burden of demonstrating that Defendant's possession of a handgun - - in the absence of any contrary evidence - - falls within the definition of "firearm." 18 U.S.C. §921(a)(3).[5]

In sum, the court denies the motion to dismiss the Information.

**IT IS SO ORDERED.**

DATED: October 29, 2013

Hon. Jeffrey T. Miller
United States District Judge

cc:       All parties

---

[5] The court rejects the Government's argument that Defendant should have the burden to establish - - by analogy to the burden of establishing affirmative defense - - that he possessed an antique firearm. See Gil v. Holder, 651 F.3d 1000, 1005 n.3 (9th Cir. 2011) ("Consistent with this holding, every circuit . . . that has considered the §921(a)(3) 'antique firearm' exception in the criminal context has treated it as an affirmative defense rather than an element of the crime."). The burden of demonstrating that Defendant is an aggravated felon remains with the Government.